603 P.2d 717
**STATE of New Mexico,
Plaintiff-Appellee,**

v.

**John David DORSEY,
Defendant-Appellant.**

**No. 12094.**

Supreme Court of New Mexico.

Dec. 4, 1979.

**608**

Reginald J. Storment, Santa Fe, Thomas J. Hynes, Randall Roberts, Farmington, for defendant-appellant.

Toney Anaya, Atty. Gen., Ralph W. Muxlow, II, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

PAYNE, Justice.

Defendant was convicted of first-degree murder. He appeals, alleging two grounds for reversal: (1) the trial court failed to direct a verdict of not-guilty by reason of insanity, and (2) the trial court failed to direct a verdict of not-guilty because there was insufficient evidence of a deliberate intention to kill. Each allegation turns on whether there was sufficient evidence to go to the jury. We affirm the trial court.

Defendant and a passenger were driving on a highway in San Juan County. They had consumed a few beers and had smoked some marijuana. The defendant began driving at a very high rate of speed in order to catch some companions in another car. When the passenger asked defendant to slow down, defendant hit him with a beer bottle and tried to push him out of the moving vehicle. The passenger turned off the ignition to stop the car. When the car came to a stop, defendant jumped out, ran across the highway median, and flagged down a truck driven by Billy Craven. Craven did not know defendant, but gave him a ride. After several miles, defendant seized a large knife in the cab of the truck and began plunging it into Craven. The truck careened off the highway onto the shoulder. Craven staggered from the truck with defendant in pursuit. Defendant chased Craven some 100 yards or more, knocked him down in the middle of the highway, straddled him, and again stabbed him repeatedly. Several passersby subdued defendant, but not before Craven had been mortally wounded.

At trial, defendant pled not-guilty by reason of insanity. To rebut the evidentiary presumption of sanity, defendant presented the expert testimony of two psychologists and one psychiatrist. Each stated that defendant suffered from latent schizophrenia, a long-standing disease of the mind, which prevented defendant from knowing the nature of his deadly act, or from forming the requisite deliberate intent to kill.

The State did not present any psychiatrists or psychologists to counter defendant's expert witnesses. The State did present lay witnesses who observed defendant at the time of the offense. They testified that the defendant acted cooly and deliberately before and during the commission of the homicide. Two medical witnesses for the State testified that if defendant was insane, the insanity resulted from a functional and not a structural abnormality.

Defendant argues that because there was no expert psychiatric or psychological evidence as to defendant's sanity at the time of the crime, the trial court erred in refusing to direct a verdict of not-guilty by reason of insanity. We disagree.

The trial court found the evidence sufficient to justify submitting the issue of insanity to the jury. The court instructed the jury on the effect which mental disease has upon a defendant's ability to form a "deliberate intention to kill." Crim. 2.00, N.M.S.A.1978 (Supp.1978). The jury found defendant guilty of first-degree murder.

In New Mexico, the standards governing the defense of insanity are well established. This Court said in *State v. White*, 58 N.M. 324, 330, 270 P.2d 727, 731 (1954), that in order for a jury to find an accused blameworthy for his acts, it must be satisfied that:

the accused, as a result of disease of the mind . . . (a) did not know the nature and quality of the act or (b) did not know that it was wrong or (c) was incapable of preventing himself from committing it.

*State v. White, supra*, attempts to draw a clear dichotomy between those defendants who are sane and those who are insane. Requiring such an all or nothing decision often makes it difficult to apply sophisticated psychiatric evaluations and theories to legal formulations.

The conflict between legal and psychiatric principles is made more understandable when the premises and purposes of each is realized. The purpose of psychiatry is to diagnose and cure mental illnesses, but not to assess blame for acts resulting from those illnesses. The law seeks to find facts and assess accountability. One author has stated the problem thusly:

Psychiatry evaluates individual behavior with the aid of standards of the most general and flexible nature such that each individual may receive special consideration for his unique characteristics. (Footnote omitted.) The inherent vagueness and lack of predictability in such a method of evaluation is foreign to the necessity, in making legal judgments about individual behavior, that a standard of evaluation be uncomplicated and uniform.

Comment, *A Punishment Rationale for Diminished Capacity*, 18 U.C.L.A.L.Rev. 561, 571 (1971). Although it may be difficult to apply, we do not hold that psychiatric testimony may not be used in determining accountability. Conversely, we cannot accept the premise that it outweighs all other evidence that bears upon a person's sanity. We express no opinion as to the relative weight to be accorded to lay or expert testimony. This is a matter for the jury to decide.

The doctrine of criminal responsibility is such that there can be no doubt "of the complicated nature of the decision to be made—intertwining moral, legal, and medical judgments," (Citations omitted.) [J]ury decisions have been accorded unusual deference even when they have found responsibility in the face of a powerful record, with medical evidence uncontradicted, pointing toward exculpation. (Footnote omitted.) The "moral" elements of the decision are . . . defined . . . by the totality of underlying conceptions of ethics and justice shared by the community, as expressed by its jury surrogate.

*United States v. Brawner*, 153 U.S.App.D.C. 1, 14, 471 F.2d 969, 982 (D.C. Cir. 1972).

Defendant contends that because he was insane according to the unanimous opinion of the psychiatrist and psychologists, this established his insanity as a matter of law and the jury should never have been allowed to consider this as a factual issue. The trial court held that the evidence was sufficiently conflicting to go to the jury. Only in those instances where the trial court has clearly abused its discretion will this Court reverse it. *State v. Moore*, 42 N.M. 135, 76 P.2d 19 (1938).

Our opinion should not be construed to say that insanity as a matter of law cannot exist. The evidence in this case, however, was not uncontroverted. An eyewitness testified that defendant was acting cooly and deliberately at the time he was stabbing Craven, as though he were "skinning a deer." The physician who conducted the autopsy testified that the "overkill" type of wounding to the victim was consistent with that done by one who is sane. The arresting deputy sheriff testified that defendant was calm and lucid on the way to and at the station house. A military witness testified that, upon defendant's induction into the army reserve, he had no past history of mental illness. An osteopathic physician who examined defendant within hours after the incident testified that defendant acted

calmly and coherently. The testimony of these and other witnesses justified the trial judge in allowing the sanity issue to go to the finder of fact.

This Court stated in *State v. Moore, supra*: "[w]e cannot supplant the conclusions of experts, though unanimous, which unanimity is rare, for the conclusion of the jury's verdict. The jury can reject all the testimony, and we must respect their action unless clearly erroneous." 42 N.M. at 160, 76 P.2d at 34.

Defendant asserts that the jury, because of the bizarre and heinous circumstances of this killing, could not and did not reasonably and dispassionately consider the evidence presented. To accept this argument would be to repudiate a fundamental principle of American criminal justice—that twelve ordinary citizens can determine such issues reasonably and dispassionately. Nothing has been submitted suggesting impropriety in jury selection or conduct.

Defendant's second argument for reversal is that he did not have a "deliberate intention" to kill Billy Craven. Defendant again relies upon the testimony of experts to support his defense that he had not formed the requisite deliberate intention or mens rea for first-degree murder. When the trial judge determined that the question of defendant's sanity was a jury issue, a critical part of the jury's determination became whether defendant had formed the deliberate intent to kill. The trial court, therefore, cannot be said to have erred, as defendant contends, in refusing to direct a verdict to the effect that defendant could not have formed a deliberate intention to kill Billy Craven.

The jury was properly instructed as to the definition of "deliberate intention." Crim. 2.00. This instruction states:

A deliberate intention may be inferred from all of the facts and circumstances of the killing. The word deliberate means arrived at or determined upon as a result of careful thought and the weighing of the consideration for and against the proposed course of action. A calculated judgment and decision may be arrived at

in a short period of time. A mere unconsidered and rash impulse, even though it includes an intent to kill, is not a deliberate intention to kill. To constitute a deliberate killing, the slayer must weigh and consider the question of killing and his reasons for and against such a choice.

The jury was also instructed as to the elements of first-degree murder and charged that defendant could not be convicted of first-degree murder unless he was found to have formed a deliberate intention to take the life of another.

The jury found that defendant had killed Billy Craven with deliberate intent. We cannot say that sufficient facts were not in existence from which a jury could reasonably infer that defendant had formed such an intent.

The matter is affirmed.

IT IS SO ORDERED.

SOSA, C. J., and EASLEY, J., concur.