819 P.2d 249

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Judith NEELY, Defendant–Appellant.**

**No. 19085.**

Supreme Court of New Mexico.

Sept. 20, 1991.

Ransom, J., filed a specially concurring opinion.

Montgomery, J., filed an opinion concurring in part and dissenting in part.

Jacquelyn Robins, Chief Public Defender, Bruce Rogoff, Gina Maestas, Asst. Appellate Defenders, Santa Fe, for defendant-appellant.

Tom Udall, Atty. Gen., Elizabeth Major, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

J. Michael Norwood, Albuquerque, William H. Carpenter, Albuquerque, for amicus curiae NM Trial Lawyers Ass'n.

Barbara Bergman, Charles W. Daniels, Albuquerque, for amicus curiae NM Defense Lawyers Ass'n.

Dennis Balske, Montgomery, for amicus curiae National Ass'n of Criminal Defense Lawyers.

## OPINION

BACA, Justice.

Defendant Judith Neely appeals her conviction on one count of first degree murder, three counts of attempted murder, and two counts of aggravated battery, for which she received a sentence of life imprisonment plus twenty-seven years.

Neely, who had a history of mental illness, drove her car into a family, killing one member, injuring two others, and leaving one physically uninjured. The sole issue at trial was whether she was criminally insane. Pursuant to NMSA 1978, Section 31-9-3 (Repl.Pamp.1984), the jury returned a verdict of guilty but mentally ill. Appellant presents the following issues for our consideration: (1) Whether the guilty but mentally ill verdict violates due process or equal protection, or subjects a defendant to cruel and unusual punishment; (2) whether restriction of voir dire and failure to instruct the jury on the consequences of the insanity and the guilty but mentally ill verdicts deprived appellant of due process and a fair trial; (3) whether the court's communication with an ill juror in appellant's absence requires reversal; (4) whether the court abused its discretion when it failed to declare a mistrial after being informed the jury was deadlocked; (5) whether sentencing violated double jeopardy principles; (6) whether the composition of the jury venire violated appellant's statutory and constitu-

tional rights, and (7) whether cumulative error deprived appellant of a fair trial. After consideration of appellant's arguments and an amicus brief filed by the New Mexico Trial Lawyer's Association in support of appellant, we affirm.

The statutory provisions pertinent to the verdict of guilty but mentally ill are NMSA 1978, Section 31-9-3 [1] to -4 [2] (Repl.Pamp. 1984).[3]

## I. THE GUILTY BUT MENTALLY ILL VERDICT IS NOT PER SE UNCONSTITUTIONAL.

### A. Due Process.

Appellant argues that the verdict of guilty but mentally ill is per se violative of her due process rights as guaranteed by the fifth and fourteenth amendments of the United States Constitution and by Article II, Sections 14 and 18 of the New Mexico Constitution.[4] Essentially, three due process claims are presented: Sections 31-9-3 and -4 do not fulfill a legitimate purpose, they confuse the jury regarding criminal responsibility, and they create the risk of a compromise verdict.

When considering the constitutionality of legislative action: "It is the duty of this Court to uphold statutes unless it is satisfied beyond all reasonable doubt that the Legislature went outside the Constitution in enacting the challenged legislation." *State v. Ball,* 104 N.M. 176, 178, 718 P.2d

1. Section 31-9-3 states in pertinent part:
 A. A person who at the time of the commission of a criminal offense was not insane but was suffering from a mental illness is not relieved of criminal responsibility for his conduct and may be found guilty but mentally ill. As used in this section, "mentally ill" means a substantial disorder of thought, mood or behavior which afflicted a person at the time of the commission of the offense and which impaired that person's judgment, but not to the extent that he did not know what he was doing or understand the consequences of his act or did not know that his act was wrong or could not prevent himself from committing the act.
 * * * * * *
 D. When a defendant has asserted a defense of insanity, the court may find the defendant guilty but mentally ill if after hearing all of the evidence the court finds beyond a reasonable doubt that the defendant:
 (1) is guilty of the offense charged;
 (2) was mentally ill at the time of the commission of the offense; and
 (3) was not legally insane at the time of the commission of the offense.
 E. When a defendant has asserted a defense of insanity, the court, where warranted by the evidence, shall provide the jury with a special verdict form of guilty but mentally ill and shall separately instruct the jury that a verdict of guilty but mentally ill may be returned instead of a verdict of guilty or not guilty, and that such a verdict requires a finding by the jury beyond a reasonable doubt that the defendant committed the offense charged and that the defendant was not legally insane at the time of the commission of the offense but that he was mentally ill at that time.

2. Section 31-9-4 states:
 The court may impose any sentence upon a defendant which could be imposed pursuant to law upon a defendant who has been convicted of the same offense without a finding of mental illness; provided that if a defendant is sentenced to the custody of the corrections department, the department shall examine the nature, extent, continuance and treatment of the defendant's mental illness and shall provide psychiatric, psychological and other counseling and treatment for the defendant as it deems necessary.

3. Eleven states in addition to New Mexico have enacted legislation providing for a verdict of guilty but mentally ill: Alaska, *see* Alaska Stat. §§ 12.47.030-.055 (1990); Delaware, *see* Del. Code Ann. tit. 11, § 408 (1987); Georgia, *see* Ga.Code Ann. § 17-7-131 (1990); Illinois, *see* Ill.Rev.Stat. ch. 38, paras. 115-2 to -4, 1005-2-6 (1989); Indiana, *see* Ind.Code § 35-36-2-3, -5 (1985); Kentucky, *see* Ky.Rev.Stat.Ann. §§ 504.-120-.150 (1990); Michigan, *see* Mich.Comp. Laws § 768.36 (1982); Pennsylvania, *see* 18 Pa. Cons.Stat.Ann. § 314, 42 Pa.Cons.Stat.Ann. § 9727 (1983 & Cum.Supp.1990); South Carolina, *see* S.C.Code Ann. §§ 17-24-20 to -30, -70 (Law.Co-op.Cum.Supp.1990); South Dakota, *see* S.D.Codified Laws Ann. §§ 23A-7-2, -27-38 to -40 (1988 & Supp.1990); and Utah, *see* Utah Code Ann. §§ 77-13-1, -16a-1 to -6 (1990 & Supp. 1990). In many of these jurisdictions, challenges have been brought against the constitutionality of the verdict, yet all of the statutes have been upheld. *See, e.g., Hart v. State,* 702 P.2d 651 (Alaska Ct.App.1985); *Taylor v. State,* 440 N.E.2d 1109 (Ind.1982); *People v. Ramsey,* 422 Mich. 500, 375 N.W.2d 297 (1985); *State v. Baker,* 440 N.W.2d 284 (S.D.1989); *see generally* Annotation, *"Guilty But Mentally Ill" Statutes,* 71 A.L.R.4th 702 (1989).

4. Amicus presented argument on the constitutionality of the statute, contending it is per se unconstitutional and unconstitutional as applied. Appellant and amicus have raised many of the same constitutional arguments.

686, 688 (1986). "In scrutinizing the constitutionality of a statute, we presume that the Legislature performed its duty and kept within the bounds fixed by the Constitution." *Id.* at 182, 718 P.2d at 692. "[W]e refuse to inquire into 'the wisdom, the policy or the justness of an act of the legislature.'" *McGeehan v. Bunch,* 88 N.M. 308, 310, 540 P.2d 238, 240 (1975) (quoting *Gruschus v. Bureau of Revenue,* 74 N.M. 775, 777, 399 P.2d 105, 106 (1965)).

### 1. Legitimate State Purpose.

◼ The statute authorizing the verdict of guilty but mentally ill is challenged on the basis that it does not advance a legitimate state purpose and is not designed to reasonably remedy the evils it is to prevent.[5]

It is asserted that because the statute does not mandate treatment,[6] the state's purpose—to distinguish mentally ill defendants from guilty ones so that the criminally responsible yet mentally ill will be treated—is not legitimate. *See People v. Delaughter,* 124 Mich.App. 356, 335 N.W.2d 37 (1983). Pursuant to the consent decree entered in *Duran v. Apodaca,* No. 77–721–C (D.N.M. July 14, 1980), and *Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), the state must make available necessary psychiatric care to all convicted defendants, whether guilty but mentally ill or simply guilty. It is further suggested that, because the jury evaluates the defendant's mental state as it existed at the time the crime was committed rather than as of trial, it is an imprecise measure of who needs treatment.

It is concluded that the remaining purpose behind the statute—to induce compromise verdicts and thereby reduce the likelihood that a jury will find a defendant not guilty by reason of insanity—is impermissible. Accordingly, the jury is asserted to believe the verdict of guilty but mentally ill guarantees treatment while keeping the defendant off the streets. Moreover, it is suggested that consideration of the guilty but mentally ill verdict deflects the jury's attention from issues of guilt and innocence by inserting irrelevant issues into deliberations with the accompanying risk of impermissible compromise.

We do not agree that there are no legitimate or rational purposes for the statute. The legislature legitimately could have intended the verdict to reduce the number of improper or inaccurate insanity acquittals and to give jurors an alternative to acquittal when mental illness is believed to play a part in an offense. The verdict clarifies for the jury the distinction between a defendant who is not guilty by reason of insanity and one who is mentally ill yet not criminally insane and, therefore, is criminally liable. The verdict also may assist in identification of convicted defendants in need of psychiatric treatment and facilitate just sentencing of mentally ill defendants. *See United States ex rel. Weismiller v. Lane,* 815 F.2d 1106, 1110–11 (7th Cir.1987); *see generally* Annotation, *"Guilty But Mentally Ill" Statutes,* 71 A.L.R.4th 702, § 18 (1989) (summarizing various purposes of statutes).

By focussing the jury's attention on the question of legal culpability, the statute increases the likelihood that the jury will return a verdict in accordance with the appropriate legal standards—and it is a legitimate state interest to see juries return verdicts that accord with the law.

> The state has a legitimate interest in having juries decide cases according to the law. The legislature could well have believed that many defendants were being found not guilty by reason of insanity even though they did not satisfy the legal standard for the defense.
>
> The difficulty is that lay juries are presented with complicated and to some extent conflicting notions of what renders a person "insane" in legal, psychiatric, and common sense terms. The [guilty but mentally ill] statutes are designed to insure that the jury applies the *legal* definition of insanity, by underscoring that a person might be "mentally ill"

---

**5.** Neither appellant nor amicus has argued for a heightened standard of scrutiny.

**6.** *See* § 31–9–4 (providing for treatment *as is deemed necessary*).

in clinical terms, "crazy" in common sense terms, yet not legally insane. As the Michigan Supreme Court has noted, "It is well within the power of the Legislature to attempt to cure what it sees as a misuse of the law."

We believe it is beyond question that the state could instruct a jury that it cannot acquit on the basis of insanity unless the legal test for insanity has been met. We see no additional objection which can be raised because the state chooses to formalize these instructions by providing a separate verdict form.

*Weismiller,* 815 F.2d at 1112 (quoting *People v. Ramsey,* 422 Mich. 500, 512, 375 N.W.2d 297, 301 (1985) citation omitted); *see also Taylor v. State,* 440 N.E.2d 1109, 1112–13 (Ind.1982) (guilty but mentally ill verdict serves state interest of securing just convictions); *Commonwealth v. Trill,* 374 Pa.Super. 549, 543 A.2d 1106 (1988) (verdict eliminates wrongful relief from criminal liability—a rational legislative goal), *alloc. denied,* 522 Pa. 603, 562 A.2d 826 (1989); *State v. Baker,* 440 N.W.2d 284, 288 (S.D.1989) (insanity distinguished from mental illness based on requirement of a finding of knowledge or intent creating criminal responsibility; verdict of guilty but mentally ill requires different factual predicate and allows jury a better understanding of the spectrum of criminal responsibility recognized by law).

The reasonableness and legitimacy of the state's purpose and means are not diminished because *all* convicted defendants must be given necessary psychiatric care whether found guilty or guilty but mentally ill and because the statute only provides for care as deemed necessary. The verdict, while allowing the jury to signal to the sentencing court and the department of corrections that in its judgment after having considered the facts presented the defendant is a person in need of evaluation, is not a clinical diagnosis but a legal determination of guilt.

### 2. Defendant Received a Fair Trial.

■ Appellant argues that the guilty but mentally ill verdict adds nothing to the existing gradations of the law—the traditional verdicts of guilty and not guilty by reason of insanity cover the spectrum of criminal responsibility. She then concludes that the verdict does not clarify and, indeed, confuses the concept of degrees of criminal responsibility and leads to compromise verdicts. We already have determined that the legislature legitimately could determine that the traditional verdict of guilty required clarification so that a jury could understand that the classification of guilty encompasses those with mental illness, but not those who are criminally insane at the time the crime is committed. Whether the verdict inserted a degree of confusion to the extent that defendant was denied a fair trial is a different question, although nonetheless one we answer negatively.

Appellant argues that the verdict of guilty but mentally ill deprives defendants of a fair trial because it misleads the jury, which naturally believes the verdict has consequences, and deflects its attention from questions of guilt and innocence. In appellant's view, juries believe that a verdict of not guilty by reason of insanity results in immediate release, whereas a guilty but mentally ill verdict results in treatment in a setting that protects public safety. Appellant asserts that this "compromise" lures juries into a conviction unwarranted by the facts. We, of course, find it unquestionable that a criminal defendant is entitled to a fair trial. The guilty but mentally ill verdict, however, does not implicate that right.

The statute authorizes different treatment for a defendant found guilty but mentally ill, and therefore, the jury makes a decision that affects the status of the defendant. Section 31–9–4, pertaining to sentencing upon a finding of guilty but mentally ill, is permissive. It states that a "court *may* impose any sentence upon a defendant which could be imposed pursuant to law." (Emphasis added.) Because the legislature left to the discretion of the trial court the determination of whether the legally-mandated sentence for a straightforward guilty verdict should be

applied to the guilty but mentally ill convicted defendant, we believe that the guilty but mentally ill verdict is more than a verdict without a distinction.[7]

The jury is not sent to consider questions of guilt, innocence, and criminal responsibility in a standardless vacuum. Section 31–9–3(A) defines mentally ill as:

a substantial disorder of thought, mood or behavior which afflicted a person at the time of the commission of the offense and which impaired that person's judgment, but not to the extent that he did not know what he was doing or understand the consequences of his act or did not know that his act was wrong or could not prevent himself from committing the act.

The standards governing the defense of insanity differ:

[I]n order for a jury to find an accused blameworthy for his acts, it must be satisfied that:

the accused, as a result of disease of the mind * * * (a) did not know the nature and quality of the act or (b) did not know that it was wrong or (c) was incapable of preventing himself from committing it.

*State v. Dorsey*, 93 N.M. 607, 609, 603 P.2d 717, 719 (1979) (quoting *State v. White*, 58 N.M. 324, 330, 270 P.2d 727, 731 (1954)).[8] The legal definition of insanity is distinct from a medical definition—through the legal definition, the law "seeks to assess accountability," whereas psychiatry's purpose "is to diagnose and cure mental illnesses." *Id.*[9]

Comparison of the definitions of insanity and mental illness clearly illustrates the difference and demonstrates that the jury has found an element of causation when it finds a defendant legally insane that is not present if the defendant has been found guilty but mentally ill. For a defendant to be determined insane, the jury must find a lack of criminal responsibility because, *as a result of the illness*, the defendant did not know the nature and quality of the act and that the act was wrong, or the defendant was not capable of preventing herself from committing the act. To be found guilty but mentally ill, on the other hand, the jury must determine that the defendant, although suffering from impaired judgment, did not meet the additional criteria for legal insanity.

We hold that, when the jury is properly apprised of the legal standards to determine insanity and mental illness, the right to a fair trial is not infringed. The role of the jury is to determine facts. The jury is asked only to determine whether as a matter of fact the defendant was guilty of the crime charged but mentally ill, or not guilty by reason of insanity, as those options are defined for them. There are valid distinctions between the two definitions, and the jury is provided with standards and guidance to properly draw the appropriate legal conclusions from the facts presented to it.

We conclude that the legislature pursued legitimate goals in enacting the statute allowing the guilty but mentally ill verdict and that the statute is reasonably designed to achieve that goal; it neither inserts confusion nor encourages compromise verdicts, and it does not impinge upon a defendant's right to a fair trial.

### B. *Equal Protection.*

Appellant contends that the guilty but mentally ill verdict violates the equal protection clauses of the United States and

---

7. We do not, however, believe the constitutionality of the statute turns on this.

8. These legal distinctions are presented to the jury through SCRA 1986, 14–5101 to –5103.

9. This distinction is important. Although the law provides for treatment of those convicted of crimes who suffer from physical or mental maladies, when legal responsibility is determined, legal, not medical standards are applied. Appellant would have us believe that the jury by determining she was mentally ill reasonably believed it determined she was in need of treatment. The verdict, however, indicated the jury's determination that legally she was mentally ill, yet not insane. Neither the jury nor the court is qualified to determine clinically whether a defendant is mentally ill or in need of treatment, and the statute leaves that decision to the corrections department.

New Mexico Constitutions. *See* U.S. Const. amends. V, XIV; N.M.Const. art. II, §§ 14, 18; *Old Dearborn Distrib. Co. v. Seagram–Distillers Corp.*, 299 U.S. 183, 57 S.Ct. 139, 81 L.Ed. 109 (1936). She asserts that there is no difference between those found not guilty by reason of insanity and those found guilty but mentally ill—under both verdicts, the defendant is seriously mentally ill. Because all seriously mentally ill defendants are similarly situated, yet the statute provides that some are sent to prison without treatment required and some are subject only to possible civil commitment, the law does not create a rational classification.

◼ Equal protection does not prohibit legislatively created classifications that are rationally based. *Martinez v. State*, 108 N.M. 382, 383, 772 P.2d 1305, 1306 (1989).[10] "The general rule is that legislation will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest." *City of Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 440, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985); *see also Frontiero v. Richardson*, 411 U.S. 677, 683, 93 S.Ct. 1764, 1768, 36 L.Ed.2d 583 (1973) (legislation is constitutional unless it is " 'patently arbitrary' and bears no rational relationship to a legitimate governmental interest"); *Richardson v. Carnegie Library Restaurant, Inc.*, 107 N.M. 688, 693, 763 P.2d 1153, 1158 (1988) ("Only when a statutory classification is so devoid of rational support or serves no valid governmental interest, so that it amounts to mere caprice, will it be struck down under the rational basis test."). Equal protection does require, however, "that all persons similarly situated should be treated alike." *Cleburne*, 473 U.S. at 439, 105 S.Ct. at 3254.

◼ The state has an interest in punishing defendants found guilty of criminal acts who, although mentally ill, are criminally culpable. Those found not guilty by reason of insanity are not criminally culpable and should not be criminally punished. The distinction between the two classes is determined by the standards articulated in our case law, statutes, and jury instructions.

◼ The legislative classification passes equal protection muster. The classification is rationally related to a legitimate interest—it allows only those mentally ill who did not have the capacity to form the appropriate criminal intent to avoid criminal liability while providing for criminal liability for those guilty because they possessed the criminal intent, yet who are nonetheless mentally ill. Although the classification admittedly creates two classes of mentally-ill defendants, those classes are not similarly situated and their legislative creation is not arbitrary. Unlike those found guilty but mentally ill, those found not guilty by reason of insanity do not possess criminal culpability or a criminal state of mind. Individuals classified as guilty but mentally ill possess distinguishing characteristics that are relevant to interests the state properly can affect. *See Cleburne*, 473 U.S. at 441, 105 S.Ct. at 3255; *Massachusetts Bd. of Retirement v. Murgia*, 427 U.S. 307, 313, 96 S.Ct. 2562, 2566–67, 49 L.Ed.2d 520 (1976). In other words, the characteristics of the two groups of mentally ill defendants justify different treatment by the state in its pursuit of a legitimate goal. *See Baker*, 440 N.W.2d at 289 (guilty but mentally ill statute based on a valid distinction between a person who is legally insane and a person who is mentally impaired).

### C. *Cruel and Unusual Punishment.*

Appellant asserts two reasons why her right to be free from cruel and unusual punishment as guaranteed by the eighth and fourteenth amendments of the United States Constitution and article II, Sections 14 and 18 of the New Mexico Constitution is violated by the use of the guilty but mentally ill verdict: (1) it is cruel and unusual punishment to hold her criminally responsible when she was found mentally ill as defined in Section 31–9–3 and, therefore, lacked the capacity to conform her actions to the requirements of the law; and

---

**10.** Appellant does not argue for heightened scrutiny.

(2) the legitimate goals of deterrence and treatment are not served.

■ Appellant was not found not guilty by reason of insanity; the jury determined she possessed the capacity to conform her actions to legal requirements despite her mental illness. It is not cruel and unusual to impose a life sentence for first degree murder on a criminally responsible defendant. *See State v. Escamilla,* 107 N.M. 510, 760 P.2d 1276 (1988); *see also Barrett v. State,* 772 P.2d 559, 573 (Alaska Ct.App. 1989) (not cruel and unusual punishment because guilty but mentally ill defendant punished for his conduct, not illness). Moreover, as discussed *supra* in Subsection (A)(2), the statute allows the court discretion to sentence a mentally ill defendant to a different sentence than that otherwise authorized, indicating the legislature's intent not to inflict cruel and inhuman punishment on the mentally ill.

■ The verdict indicated the jury's determination that defendant was criminally responsible. Despite her illness, she appreciated the wrongfulness of her actions and possessed the ability to conform her conduct to the law; thus deterrence is an appropriate consideration. *See People v. Crews,* 122 Ill.2d 266, 119 Ill.Dec. 308, 522 N.E.2d 1167 (1988). Once a defendant is convicted, the statute provides for evaluation and treatment as deemed necessary. More is not required.

Accordingly, we hold that Sections 31–9–3 and –4 are not per se violative of either our state or the federal constitution.

## II. THE STATUTE IS NOT UNCONSTITUTIONAL AS APPLIED.

Appellant argues that restriction on voir dire and failure to instruct the jury on the consequences of the insanity and guilty but mentally ill verdicts deprived her of a fair trial and of due process. *See* U.S. Const. amends. VI, XIV; N.M.Const. art. II, §§ 14, 18; *Turner v. Murray,* 476 U.S. 28,

106 S.Ct. 1683, 90 L.Ed.2d 27 (1986); *Ham v. South Carolina,* 409 U.S. 524, 93 S.Ct. 848, 35 L.Ed.2d 46 (1973). We hold that she was not entitled to an instruction on consequences; accordingly, voir dire also was properly restricted.

■ Appellant asserts that when not guilty by reason of insanity and guilty but mentally ill verdicts were submitted to the jury without explanation of the consequences of the two verdicts, the guilty but mentally ill verdict is so much more appealing that it is a foregone conclusion. In her view the jury will believe that the guilty but mentally ill verdict differs from a guilty verdict and will protect society by keeping the defendant incarcerated while providing treatment, most likely in a hospital, whereas the not guilty by reason of insanity verdict will result in outright freedom.[11]

The instructions given the jury adequately set forth the standards it was to use to evaluate whether appellant was not guilty by reason of insanity or was guilty but mentally ill. In New Mexico, instructions regarding the consequences of a verdict generally are not given. *See State ex rel. Schiff v. Madrid,* 101 N.M. 153, 679 P.2d 821 (1984); SCRA 1986, 14–6006 (jury's role is to determine facts). In fact, the jury is expressly admonished *not* to consider the consequences of its verdict. SCRA 1986, 14–6007. An instruction on the consequences of a verdict of not guilty by reason of insanity would present an irrelevant issue to the jury. *State v. Chambers,* 84 N.M. 309, 502 P.2d 999 (1972); *see State v. Williams,* 97 N.M. 634, 642 P.2d 1093, *cert. denied,* 459 U.S. 845, 103 S.Ct. 101, 74 L.Ed.2d 91 (1982); *State v. Lujan,* 94 N.M. 232, 608 P.2d 1114 (1980); *State v. Luna,* 93 N.M. 773, 606 P.2d 183 (1980).

Appellant requests we overrule *Chambers* and that line of cases holding that an instruction on the consequences of a verdict of not guilty by reason of insanity is

---

11. Appellant errs in her assertion that a guilty but mentally ill verdict, while leading the jury to believe it will result in treatment, only insures the barest minimum of treatment at the whim of the department of corrections. If that department does not provide appropriate care as required, the solution should be found in collateral proceedings. We cannot determine that the statute is unconstitutional as applied based on such speculation.

improper, asserting that the advent of the guilty but mentally ill verdict has cast doubt on the continuing validity of that holding and that our opinion in *State v. Henderson*, 109 N.M. 655, 789 P.2d 603 (1990), has clarified that a jury's misconceptions regarding consequences of a verdict may affect deliberations to the extent that due process requires curative instructions. Appellant also relies on authority from other jurisdictions holding that instructions on consequences under these circumstances is a better rule. *See, e.g., State v. Shickles*, 760 P.2d 291 (Utah 1988).

We disagree. A not guilty by reason of insanity verdict does not result automatically in the defendant's confinement—the district attorney is not required to pursue civil commitment proceedings. *See* NMSA 1978, §§ 43-1-11 to -12 (Repl.Pamp.1989). Civil commitment proceedings are discretionary. Commitment depends upon evaluation of the defendant's mental state at the time of proceedings and is not for any definite period of time. The law does not mandate treatment or confinement. Under these circumstances, it is not apparent that an instruction as to the consequences would alleviate a jury's concern that a defendant may soon be released.[12] Although it may be accurate, as contended, that in fact defendants found not guilty by reason of insanity always will be confined institutionally, the law does not require civil commitment, and an instruction to that effect would be inaccurate.

In *Henderson*, a death penalty case, we determined that a jury should be informed about the meaning of a life sentence. That decision was based on the heightened scrutiny required by " 'the qualitative difference of death from all other punishments,' " 109 N.M. at 659, 789 P.2d at 607 (quoting *Caldwell v. Mississippi*, 472 U.S. 320, 329, 105 S.Ct. 2633, 2639, 86 L.Ed.2d 231 (1985)), that demanded that the state "cannot limit the sentencer's consideration

of any relevant circumstance that could 'cause it to *decline to impose* the death penalty.' " *Id.* at 658, 789 P.2d at 606 (quoting *McCleskey v. Kemp*, 481 U.S. 279, 304, 107 S.Ct. 1756, 1773, 95 L.Ed.2d 262 (1987)). Furthermore, in the unique setting of a death penalty case, the jury is called on, not only to determine guilt or innocence, but also to determine the appropriate sentence.

We decline to extend the holding of *Henderson* to the case at bar. This case does not require the special protection necessary when a death sentence is at issue. The jury is cautioned that it should not consider consequences; this represents a longstanding policy that a jury can be trusted to perform the task as presented within the confines imposed by the law. Because it is the province and responsibility of the jury only to determine the facts in the context of the applicable law, we hold that it should not be instructed on the consequences of its verdict. As we stated in *Lujan*, 94 N.M. at 234, 608 P.2d at 1116:

> The jury is not to concern themselves with the consequences of their verdict. They are to patiently and dispassionately weigh the evidence and arrive at a verdict in accordance with the law as given to them by the court. To instruct them on the consequences of their verdict would add an element to their deliberations that is not proper.

■ Because we hold that the court properly did not give an instruction on consequences, we find the court also properly precluded voir dire on the question of consequences. We examine this issue applying an abuse of discretion standard. *See State v. Espinosa*, 107 N.M. 293, 296, 756 P.2d 573, 576 (1988). The court did not abuse its discretion in refusing voir dire on an issue beyond the scope of jury deliberations.

---

**12.** The facts of this case bear out this concern. Testimony indicated that Neely's condition at the time of the criminal act was aberrational, caused by the confluence of extreme emotional distress and failure to take medication. These problems were resolvable and would not necessarily require further institutionalization—the extreme psychosis was controllable. Neely had been relatively functional and had not been a danger to society previously, and apparently does not suffer from the type of disease that could not be stabilized.

### III. COMMUNICATION WITH ILL JUROR IN DEFENDANT'S ABSENCE.

 Appellant relies on *State v. Wilson*, 109 N.M. 541, 787 P.2d 821 (1990); *Hovey v. State*, 104 N.M. 667, 726 P.2d 344 (1986), and *State v. McDuffie*, 106 N.M. 120, 739 P.2d 989 (Ct.App.1987), to argue that due process requires reversal because a juror, ill with chicken pox, called the court and asked to be excused. It is not clear from the record whether the court actually spoke with the juror; the record shows only that the juror informed someone at the court of her illness.[13] The record also shows that the court did not excuse the juror until it discussed the matter with counsel, who agreed with dismissal. Appellant, however, was not present at the latter meeting and now asserts error because counsel cannot waive her right to be present. *See Hovey*, 104 N.M. at 671, 726 P.2d at 348.

"[I]t is improper for the trial court to have any communication with the jury *concerning the subject matter of the court proceedings* except in open court and in the presence of the accused and his counsel." *Hovey*, 104 N.M. at 669, 726 P.2d at 346 (emphasis added). "A presumption of prejudice arises whenever such an *improper* communication occurs, and the State bears the burden of rebutting that presumption by making an affirmative showing on the record that the communication did not affect the jury's verdict." *Id.* at 670, 726 P.2d at 347 (emphasis added).

*Wilson* added a somewhat unclear gloss to the law articulated in *Hovey*. In *Wilson*, this court determined that cumulative error, including prosecutorial misconduct, a failure of proof, alteration of a uniform jury instruction, *and* the court's failure to make a record of its conversation with a juror and to offer the defendant an opportunity to be present during that conversation, deprived the defendant of a fair trial. This court emphasized the constitutional dimension of a defendant's right to participate in every phase of the trial, while noting that the rule does not "cover every situation in which a trial judge communicates with jurors about a matter that is not at issue in the trial." 109 N.M. at 546, 787 P.2d at 826.

In *Wilson*, this court equated with the reversible error in *Hovey* two communications between the court and the juror, where the court had three previous warnings of the need to meet with the juror; it sua sponte decided to dismiss the juror; it failed to allow counsel or defendant to be present at the meeting; and it neglected to make a record. Analysis of *Hovey* clarifies that there are two prongs to the analysis: (1) determination of error, and (2) if there is error, analysis of whether the state has rebutted the presumption of prejudice. The first prong is not met unless an *improper* communication occurs. That prong has not been met in the instant case, where the communication concerned a housekeeping matter, and where, unlike *Wilson*, the court had no notice prior to the communication. A judge does not risk error every time he answers a phone. As in this case, if a juror calls to say she is ill and the court cannot take steps to prevent the communication, there is not error without more. The court did not act to dismiss the juror without consulting counsel, and the court acted with prudence when it made a record.

Furthermore, the court took steps to determine that defendant had been apprised of the communication through her attorney and had been given and waived the opportunity to be present. Defendant's counsel was asked whether the matter had been discussed with the defendant and he answered affirmatively. Neither *Hovey* nor *Wilson* requires more.

It is not clear from the record whether defense counsel had apprised appellant of the problem with the juror who was dismissed, or only that of another juror. This does not affect our conclusion. The dispositive consideration is that the question before the court—whether the juror should be excused because of her illness—did not

---

**13.** Our discussion assumes, however, that the court did discuss the matter personally with the juror.

concern an *issue in the case*. *Wilson* does not require us to find reversible error in every communication between the court and a juror when the communication is not relevant to substance of the case. We do not repudiate the dictum in *Wilson* to the effect that the *better practice* is to inform defense counsel and defendant as soon as practicable of the substance of the communication. *See* 109 N.M. at 546, 787 P.2d at 825. This appears to have been done. We emphasize, furthermore, that *Wilson* did not in any way limit the "presumption of prejudice" analysis articulated in *Hovey*, 104 N.M. at 670, 726 P.2d at 347, to be applied when error is present.[14]

## IV. MISTRIAL AFTER DEADLOCK.

■ After several days of deliberation, the court received a communication from the jury stating that it was deadlocked. The court, with defense counsel and defendant present, then proposed to ask the foreperson whether further deliberations would assist in reaching a verdict. Defense did not object, the court asked the foreperson, and she responded affirmatively. The jury returned its verdict shortly thereafter. Appellant contends the court directed the jury to resume deliberation, thus coercing the presumably sole dissenting juror to return a guilty verdict.

We disagree. The court's instruction accorded with this court's direction in *State v. McCarter*, 93 N.M. 708, 710, 604 P.2d 1242, 1244 (1980):

> We realize that when a statement is submitted to the court by the jury during deliberations concerning the inability of the jury to arrive at a verdict, together with a disclosure of the numerical division, the judge must communicate with that jury in some fashion. The judge not

only can, but should, communicate with the jury and can do so if the communication leaves with the jury the discretion whether or not it should deliberate further. The court can inform the jury that it *may* consider further deliberations, but not that it *must* consider further deliberations.

## V. DOUBLE JEOPARDY.

■ Appellant asserts that the court erred in imposing consecutive sentences on the first-degree murder conviction and on the three counts of attempted murder because the same evidence was used to prove intent. The court did merge two counts of aggravated battery with the attempted murder convictions.

Appellant drove her car into the four members of the Light family, killing one and injuring two others. Conviction and sentencing on these four separate counts, where each act against the individual victims constituted a separate offense, does not violate double jeopardy. *See State v. Swafford*, 112 N.M. 3, 810 P.2d 1223 (1991); *Herron v. State*, 111 N.M. 357, 805 P.2d 624 (1991); *State v. Pierce*, 110 N.M. 76, 792 P.2d 408 (1990).

## VI. JURY VENIRE.

■ Appellant raises two points regarding composition of the jury venire. First she argues that she was denied her right to a venire composed of voter registration and driver's license records as required by NMSA 1978, Section 38–5–3 (Cum.Supp. 1990). We resolved this issue in *State ex rel. Stratton v. Serna*, 109 N.M. 1, 780 P.2d 1148 (1989), wherein we observed that the plain language of the statute indicated that the expanded jury venire pool would take effect ninety days after the next gen-

---

**14.** Our conclusion is borne out by our research into the treatment of this issue in other jurisdictions. *See, e.g., United States v. Taylor*, 562 F.2d 1345, 1365–66 (2d Cir.) (communication with juror regarding possible inability to serve for personal reasons is harmless error; concurrence by Judge Timbers concluded there was no error because the communication did not relate to case's merits), *cert. denied*, 432 U.S. 909, 97 S.Ct. 2958, 53 L.Ed.2d 1083 (1977). *United States v. Hall*, 536 F.2d 313, 324 (10th Cir.1976) (no error in court communication with juror regarding health); *Dixon v. State*, 605 P.2d 882 (Alaska 1980); *see generally* Annotation, *Prejudicial Effect, in Criminal Case, of Communication Between Court Officials or Attendants and Jurors*, 41 A.L.R.2d 227 (1955); Annotation, *Postretirement Out–of–Court Communications Between Jurors and Trial Judge as Grounds for New Trial or Reversal in Criminal Case*, 43 A.L.R.4th 410 § 57 (1986).

eral election following its enactment. Appellant's trial took place before the expanded pool took effect. Section 38–5–3 was not violated.

■ Second, appellant asserts that her right to a jury comprised of a fair cross section of the community was denied because only voter registration lists were used to compile the venire. *See* U.S. Const. amend. VI; N.M. Const. art. II, §§ 14, 18; *Taylor v. Louisiana,* 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975); *State v. Lopez,* 96 N.M. 456, 631 P.2d 1324 (Ct.App.1981). Appellant presented to the court a report purporting to establish that the jury venire obtained through voter registration lists underrepresented the hispanic population.

> [T]o establish a prima facie violation of the fair-cross-section requirement, the defendant must show (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.

*Duren v. Missouri,* 439 U.S. 357, 364, 99 S.Ct. 664, 668, 58 L.Ed.2d 579 (1979) (quoted in *Lopez,* 96 N.M. at 459, 631 P.2d at 1327).

Appellant has not made out a prima facie case. An analysis of hispanic surnames, without more, is not an adequate indicator of whether an individual is of hispanic descent. Moreover, the data presented to the court does not establish that, if there is underrepresentation, it resulted from *systematic* exclusion of hispanics from voter registration rolls.

## VII. CUMULATIVE ERROR.

Because we have not found error, we find no merit to the assertion of cumulative error.

For the foregoing reasons, we affirm the judgment of the district court.

IT IS SO ORDERED.

SOSA, C.J., and FRANCHINI, J., concur.

RANSOM, J., specially concurs.

MONTGOMERY, J., concurs in part, dissents in part.

RANSOM, Justice (specially concurring).

I specially concur. While I am in accord with much of the sentiment expressed by Justice Montgomery in his dissent, I cannot conclude with him that the guilty but mentally ill verdict is little more than a charade. I confess that my initial reaction to this case was that such verdict indeed was a subterfuge that surreptitiously deprived the defendant of her insanity defense. Upon much reflection, however, I now believe there is a substantial relationship between that verdict form and the interest of justice in that the verdict form does aid the jury to focus meaningfully on whether the mental disease at issue does or does not warrant a verdict of not guilty.

To assure against the misuse of such verdict form, I nonetheless strongly urge that by appropriate instructions the jury be disabused of any misconception that the guilty but mentally ill verdict has consequences different than a guilty verdict.

MONTGOMERY, Justice (concurring in part, dissenting in part).

I concur with Parts III through VII of the Court's opinion. However, on the critical issue in this case—the constitutionality of the guilty but mentally ill verdict and the integrally related question of whether the jury should have been instructed on the consequences of that verdict and the consequences of a verdict of not guilty by reason of insanity—I dissent.

Basically, I have come to a conclusion opposite from that reached by the majority in Part I(A)(2) of its opinion. In my view, the guilty but mentally ill verdict distorts the fact-finding process of the jury, resulting in a trial which is not fair and which therefore violates due process. It does this in just the ways the majority says it does not: It misleads the jurors by encouraging them to think that there is some significant difference between a straight "guilty" ver-

dict and a verdict of "guilty but mentally ill," when there is no such difference. It induces compromise verdicts by seducing jurors into settling on a middle ground between guilty and not guilty, when in fact there is no middle ground: The defendant found guilty but mentally ill receives no greater entitlement to psychiatric evaluation and treatment than is already made available to other inmates. The jury, or at least some jurors, will inevitably believe that a guilty but mentally ill verdict will result in the defendant's receiving either leniency or treatment; but since we fail to ensure that such a defendant actually receives a more lenient sentence or greater opportunities for treatment as other persons convicted of the same offense, we "palter . . . in a double sense" with the jury and the defendant: We "keep the word of promise to [their] ear, and break it to [their] hope." [1]

These reasons why the guilty but mentally ill verdict is basically unfair, as well as unsound from a policy standpoint, have been thoroughly explored by others, and I shall not add to the existing weight of paper on the subject. *See People v. Ramsey,* 422 Mich. 500, 520–53, 375 N.W.2d 297, 305–21 (1985) (Levin, J., dissenting); *see generally* Fentiman, *"Guilty But Mentally Ill": The Real Verdict is Guilty,* 26 B.C.L.Rev. 601 (1985); McGraw, Farthing–Capowich & Keilitz, *The "Guilty But Mentally Ill" Plea and Verdict: Current State of the Knowledge,* 30 Vill.L.Rev. 117 (1985); Rodriguez, LeWinn & Perlin, *The Insanity Defense Under Siege: Legislative Assaults and Legal Rejoinders,* 14 Rutgers L.J. 397 (1983); Slobogin, *The Guilty But Mentally Ill Verdict: An Idea Whose Time Should Not Have Come,* 53 Geo.Wash.L.Rev. 494 (1985); Stelzner & Piatt, *The Guilty But Mentally Ill Verdict and Plea in New Mexico,* 13 N.M.L.Rev. 99 (1983); Comment, *Indiana's Guilty But Mentally Ill Statute: Blueprint to Beguile the Jury,* 57 Ind.L.J. 639 (1982); Note, *The Guilty But Mentally Ill Verdict*

*and Due Process,* 92 Yale L.J. 475 (1983). As the American Bar Association has noted, the guilty but mentally ill verdict

> is not a proper verdict at all. Rather it is a dispositional mechanism transferred to the guilt determination phase of the criminal process. The hybrid nature of the verdict is demonstrated by the fact that a jury determination of mental illness at the time of a charged offense is relevant not to criminal responsibility or culpability but to whether accused persons *might* receive treatment after they have been sentenced * * * *

*ABA Criminal Justice Mental Health Standards,* standard 7–6.10 commentary, at 393–94 (1988) (emphasis in original).

The majority opinion points to three purposes that it finds the legislature could have intended in enacting our guilty but mentally ill statutes: [2] To reduce the number of improper or inaccurate insanity acquittals; to clarify for the jury the distinction between a defendant who is not guilty by reason of insanity and one who is mentally ill yet not criminally insane; and to assist in identifying convicted defendants in need of psychiatric treatment and facilitate just sentencing of mentally ill defendants.[3] Unlike the majority, I find the last of these objectives to be illegitimate and the first wholly speculative and devoid of foundation. Though I concede that the second objective—reducing jury confusion and assisting it to understand graduations in degrees of criminal responsibility—is a proper legislative goal, I disagree with the deference the majority accords to this goal in the face of the defendant's countervailing interest in a fair trial.

As to the first objective, nothing has been cited to us to establish or even suggest that by enacting Sections 31–9–3 and 31–9–4 our legislature was attempting to "reduce the number of improper or inaccurate insanity acquittals." There is no evidence at all that in New Mexico there has

---

1. W. Shakespeare, *Macbeth,* act V, scene vii.

2. NMSA 1978, §§ 31–9–3, –4 (Repl.Pamp.1984).

3. Identifying defendants in need of treatment and facilitating just sentencing together comprise a possible dispositional purpose for the statutes.

been a significant number of *any* insanity acquittals, much less improper or inaccurate ones. Indeed, in the only study cited to us discussing the incidence of insanity acquittals in New Mexico, the authors state: "Although hard data is currently unavailable in New Mexico, professionals in the mental health, corrections, and criminal justice fields agree that few defendants in New Mexico have successfully raised the [not guilty by reason of insanity] defense." Stelzner & Piatt, *supra* at 113. *See also ABA Criminal Justice Mental Health Standards,* Part VI introduction, at 323 ("The best evidence suggests that the mental nonresponsibility [insanity] defense is raised in less than 1 percent of all felony cases in the United States and is successful in about a fourth of those.").

Thus, I conclude that the guilty but mentally ill verdict is, as the *amici* describe it, "a solution in search of a problem." If the legislature were concerned with the *number* of insanity acquittals, without regard to their propriety or accuracy, the legislature might move more directly and seek to abolish the insanity defense altogether, without injecting the confusing and misleading device of an alternative verdict (which, as the ABA states, is not a proper verdict at all).[4]

With respect to the third of the proffered legislative objectives—helping to identify convicts in need of psychiatric treatment and facilitating just sentencing of mentally ill defendants or, as the majority also phrases it, "allowing the jury to signal to the sentencing court and the department of corrections that ... the defendant is a person in need of evaluation"—there are two problems. First, as the majority itself recognizes, the disposition of the defendant after conviction is ordinarily outside the province of the jury—the jury generally has no business considering the consequences of its verdict or actually making dispositional decisions, and indeed it may be reversible error for the jury to do so.

See, e.g., *State ex rel. Schiff v. Madrid,* 101 N.M. 153, 678 P.2d 821 (1984); *United States v. Patrick,* 494 F.2d 1150 (D.C.Cir. 1974) (permitting jury to make recommendation of psychiatric treatment held reversible error); *see also Ramsey,* 422 Mich. at 550–51, 375 N.W.2d at 320 (guilty but mentally ill verdict inconsistent with rule that jurors should confine deliberations to issue of guilt or innocence and should not consider potential disposition of defendant after verdict).

The second problem with this third supposed legislative objective is that it is frustrated by the majority's own holding that instructing the jury on the consequences of a guilty but mentally ill verdict is improper. If we are to recognize the legitimacy of this objective, we should be consistent and inform the jury as to the consequences of its choice, if it finds the defendant mentally ill, between a verdict of guilty but mentally ill and a verdict of not guilty by reason of insanity. I recognize the well-settled rule of law, noted above, that the jury is not to concern itself with the consequences of its verdict; but I believe there is or should be an exception when the verdict is avowedly dispositional in effect. We have adopted such an exception when the jury is called upon to decide a defendant's disposition in a capital sentencing proceeding. *State v. Henderson,* 109 N.M. 655, 658–59, 789 P.2d 603, 606–07 (1990). To me, it is no less imperative that, when one purpose of a statute is to enable the jury to participate in the defendant's disposition after conviction, the jury be instructed on the practical consequences of the different verdicts it is called upon to choose from. To instruct the jury instead—as was done in this case—that it is not to concern itself with the consequences of its verdict, and at the same time to rely on the jury's ability to send "signals" to the sentencing court and the Corrections Department as an objective legitimating this statute, strikes me as fundamentally unfair.

4. I express no view as to whether such an attempt by the legislature would be constitutional. *Compare State v. Korell,* 213 Mont. 316, 690 P.2d 992 (1984) (upholding legislature's abolition of insanity defense except where relevant to negate element of intent) *with State v. Hoffman,* 328 N.W.2d 709, 714–15 (Minn.1982) (defendant has due process constitutional right to assert defense of insanity).

In point of fact, what the jury *really* needs are instructions telling it that a defendant found guilty but mentally ill will have precisely the same opportunities for mental treatment as all other prison inmates—no more, no less—and will probably receive the same sentence as any other person convicted of the same crime, mentally ill or not. Likewise, to put such an instruction into perspective, the jury needs to be told that a finding of not guilty by reason of insanity may, and probably will, result in the involuntary commitment of the defendant to the state hospital for an indefinite time and at least until the defendant is "cured." The absence of any requirement that the court give such consequential instructions, and the failure to so instruct in a particular case, when considered in conjunction with the misleading effect of the verdict itself, in my view render the statutes unconstitutional on their face and as applied. *See generally State v. Shickles,* 760 P.2d 291, 296–98 (Utah 1988).

Turning to the second of the majority's three presumed purposes of the guilty but mentally ill verdict, I concede that legislation intended to clarify matters for the jury, to clear up potential sources of confusion,[5] and (more particularly in this case) to inform the jury about differences between degrees of criminal responsibility based on differences in impairment resulting from mental illness, has a legitimate purpose. Of course, the appellate courts in New Mexico, in other contexts, have not found it difficult, when they wanted to invalidate a statute dealing with procedure in a criminal case, to characterize such an objective as impermissible in light of the exclusive power in this Court to regulate matters of judicial procedure. *See, e.g., State v. Garcia,* 101 N.M. 232, 680 P.2d 613 (Ct.App.) (invalidating NMSA 1978, Section 31–11–6, in reliance on *State ex rel. Anaya v. McBride,* 88 N.M. 244, 539 P.2d 1006 (1975), and *Ammerman v. Hubbard*

*Broadcasting, Inc.,* 89 N.M. 307, 551 P.2d 1354 (1976)), *cert. quashed,* 101 N.M. 189, 679 P.2d 1287 (1984). While I certainly would not rely on the *Ammerman* doctrine to invalidate Sections 31–9–3 and –4, *see Maples v. State,* 110 N.M. 34, 37–43, 791 P.2d 788, 791–97 (1990) (Montgomery, J., dissenting), it is to me an entirely different question whether those statutes pass constitutional muster under the Due Process Clauses of our state and federal constitutions.

This question cannot be answered solely by examining the legitimacy of the state's objective in adopting the statute; the nature of the defendant's interest infringed by the statute, and the strength of that interest, must also be considered. The majority does not in terms set out a standard of review in a due process case such as this, although by noting in footnote 5 that defendant does not argue for a "heightened standard of scrutiny" the majority implies that some such toothless standard as "minimum rationality" is all that is required to uphold the statute's constitutionality.[6] For its part, the State expressly articulates a standard of due process review: "The test to measure the validity of a statute under due process is whether the statute is reasonably designed to remedy the evils which the legislature has determined to be a threat to the public health, safety and general welfare." The State cites *Williamson v. Lee Optical, Inc.,* 348 U.S. 483, 486–88, 75 S.Ct. 461, 463–65, 99 L.Ed. 563 (1955), in support of this standard.

*Williamson,* of course, is a case involving economic regulation of a commercial enterprise; not surprisingly, the Supreme Court said: "The day is gone when this Court uses the Due Process Clause of the Fourteenth Amendment to strike down state laws, regulatory of business and industrial conditions, because they may be unwise, improvident, or out of harmony

---

5. However, as I have argued, the guilty but mentally ill verdict, rather than eliminating confusion, tends to inject it into the jury's deliberations.

6. To be fair, however, the majority does proceed to examine the defendant's claim of impairment of her right to a fair trial, though it then finds (incorrectly in my view) that that right is not impaired.

with a particular school of thought." 348 U.S. at 488, 75 S.Ct. at 464 (citing, *inter alia, Nebbia v. New York*, 291 U.S. 502, 54 S.Ct. 505, 78 L.Ed. 940 (1934)). However the various formulations for gauging a challenge to state regulation of economic and social conditions may have evolved over this century, in my view it remains true today that a due process challenge to a state deprivation of liberty, particularly when the means of deprivation is an assertedly unfair trial, must be assessed by comparing the strength of the state's interest in enacting the challenged legislation with the depth of the state's incursion into the individual's right not to be deprived of her liberty without a fair trial. Given the fundamental role that a fair trial plays in our society, *see, e.g., Spencer v. Texas*, 385 U.S. 554, 563–64, 87 S.Ct. 648, 653, 17 L.Ed.2d 606 (1966) ("[T]he Due Process Clause guarantees the fundamental elements of fairness in a criminal trial."), a statute that impairs this right must have a compelling justification indeed. In short, I follow Justice Marshall's formulation, albeit in a somewhat different context, that "as with other due process challenges, the inquiry should be whether the governmental interests served by any given restriction outweigh the individual deprivations suffered." *Bell v. Wolfish*, 441 U.S. 520, 564, 99 S.Ct. 1861, 1887, 60 L.Ed.2d 447 (1979) (Marshall, J., dissenting). I believe this test has been applied, if not expressly articulated, in other, relatively recent Supreme Court decisions, *e.g., Ake v. Oklahoma*, 470 U.S. 68, 78, 105 S.Ct. 1087, 1093, 84 L.Ed.2d 53 (1985) (Marshall, J.) (indigent criminal defendant must have access to psychiatric assistance for defense when sanity at issue; "[t]he private interest in the accuracy of a criminal proceeding that places an individual's life or liberty at risk is almost uniquely compelling."); *Spencer*, 385 U.S. at 564, 87 S.Ct. at 654 (prejudicial effect of evidence of prior convictions where offered to enhance penalty weighed against state purpose in deterring recidivism).

In this case the majority and I part company not so much on the nature of the due process inquiry nor on the strength of the defendant's interest as on the extent, if any, to which that interest has been impaired. The majority and I simply disagree over whether or not the guilty but mentally ill verdict, combined with the failure to instruct the jury on the consequences of that verdict and of an acquittal by reason of insanity, deprived defendant of her right to a fair trial. I have concluded that the guilty but mentally ill verdict is little more than a charade—a subterfuge that surreptitiously deprives defendants suffering from mental illness of the defense of insanity. It deflects the jury's attention from the issue of guilt or innocence to the extraneous issue of whether, though perhaps guilty, she should receive special consideration because of her mental illness. Since the legislature has not provided for any such special consideration, and since the jury is prevented from being informed of this basic fact, the result is a "procedure which * * * offer[s] a possible temptation to the average man * * * to forget the burden of proof required to convict the defendant * * * [and] denies the latter due process of law." *Tumey v. Ohio*, 273 U.S. 510, 532, 47 S.Ct. 437, 444, 71 L.Ed. 749 (1927). I therefore dissent.